# EXHIBIT 1

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305



**Mac Warner**
Secretary of State
State of West Virginia
Phone: 304-558-6000
886-767-8683
Visit us online:
www.wvsos.com

USPS CERTIFIED MAIL™



9214 8901 1251 3410 0002 3913 76

WESTERN REGIONAL JAIL AND CORRECTIONAL FACILITY
1 O'HANLON PLACE
BARBOURSVILLE , WV 25504

Control Number: 225878
Defendant: WESTERN REGIONAL JAIL AND CORRECTIONAL FACILITY
1 O'HANLON PLACE
BARBOURSVILLE , WV 25504 US

County: Cabell
Civil Action: 18-C-425
Certified Number: 92148901125134100002391376
Service Date: 9/17/2018

I am enclosing:

**1 summons and amended complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in your name and on your behalf.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on your behalf as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper,* **not to the Secretary of State's office**.

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

## CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

KATHLEEN JEFFERS, individually and as
Administratrix of the ESTATE of
BRADLEY SIDERS, II, deceased,
    Plaintiff,

vs.

CIVIL ACTION NO. 18-C-425
JUDGE Christopher D. Chiles

WEST VIRGINIA DIVISION
OF CORRECTIONS AND
REHABILITATION, FORMERLY
WEST VIRGINIA REGIONAL JAIL
AND CORRECTIONAL FACILITY AUTHORITY;
WESTERN REGIONAL JAIL AND
CORRECTIONAL FACILITY, FORMERLY
WESTERN REGIONAL JAIL;
OFFICER RICKY GABERIELSE,
INDIVIDUALLY and AS AN AGENT
OF WEST VIRGINIA DIVISION OF
CORRECTIONS AND REHABILITATION,
FORMERLY WESTERN REGIONAL JAIL
AND CORRECTIONAL FACILITY AUTHORITY;
OFFICER JIMMY PINE, INDIVIDUALLY
and AS AN AGENT OF WEST VIRGINIA
DIVISION OF CORRECTIONS AND
REHABILITATION, FORMERLY
WESTERN REGIONAL JAIL AND
CORRECTIONAL FACILITY AUTHORITY;
PRIMECARE MEDICAL OF WEST
VIRGINIA, INC.; PSIMED CORRECTIONS, LLC;
ANITA PETITTE, INDIVIDUALLY and
AS AN EMPLOYEE OF PRIMECARE MEDICAL
OF WEST VIRGINIA, INC. and/or
PSIMED CORRECTIONS, LLC; and
JOHN and JANE DOE OR DOES,
    Defendants.

## *SUMMONS*

To the above-named Defendant, West Virginia Regional Jail and Correctional Facility:

*IN THE NAME OF THE STATE OF WEST VIRGINIA*, you are hereby summoned and required to serve upon Chad Hatcher, Hatcher Law Office, Plaintiff's attorney, whose address is 636 Fifth Avenue, Huntington, West Virginia, an Answer, including any related Counterclaim you may have, to the Amended Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your Answer within thirty (30) days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the Amended Complaint and you will be thereafter barred for asserting in another action any claim you may have which must be asserted by Counterclaim in the above-styled civil action.

Dated: 9-14-18

JEFFREY E. HOOD
Kira [signature] dep.
Clerk of Court

IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

KATHLEEN JEFFERS, individually and as
Administratrix of the ESTATE of
BRADLEY SIDERS, II, deceased,
    Plaintiff,

vs.                                                           CIVIL ACTION NO. 18-C-425
                                                                JUDGE Christopher D. Chiles

WEST VIRGINIA DIVISION
OF CORRECTIONS AND
REHABILITATION, FORMERLY
WEST VIRGINIA REGIONAL JAIL
AND CORRECTIONAL FACILITY AUTHORITY;
WESTERN REGIONAL JAIL AND
CORRECTIONAL FACILITY, FORMERLY
WESTERN REGIONAL JAIL;
OFFICER RICKY GABERIELSE,
INDIVIDUALLY and AS AN AGENT
OF WEST VIRGINIA DIVISION OF
CORRECTIONS AND REHABILITATION,
FORMERLY WESTERN REGIONAL JAIL
AND CORRECTIONAL FACILITY AUTHORITY;
OFFICER JIMMY PINE, INDIVIDUALLY
and AS AN AGENT OF WEST VIRGINIA
DIVISION OF CORRECTIONS AND
REHABILITATION, FORMERLY
WESTERN REGIONAL JAIL AND
CORRECTIONAL FACILITY AUTHORITY;
PRIMECARE MEDICAL OF WEST
VIRGINIA, INC.; PSIMED CORRECTIONS, LLC;
ANITA PETITTE, INDIVIDUALLY and
AS AN EMPLOYEE OF PRIMECARE MEDICAL
OF WEST VIRGINIA, INC. and/or
PSIMED CORRECTIONS, LLC; and
JOHN and JANE DOE OR DOES,
    Defendants.

## AMENDED COMPLAINT

COMES NOW the Plaintiff, Kathleen Jeffers, individually, and as the Administratrix of the Estate of Bradley Siders, II, and for her Complaint against the Defendants states as follows:

## I. JURISDICTION AND VENUE

1. This action arises under W.Va. Code §55-7-6; the West Virginia Medical Professional Liability Act, W.Va. Code §55-7B-1 *et seq.*; and under the Constitution and laws of the State of West Virginia, particularly Article 3 §§5 and 10.

2. The Plaintiff has complied with the provisions of W.Va. Code §55-17-3 by sending the required notice to the Chief Officer of the West Virginia Division of Corrections and Rehabilitation, formerly West Virginia Regional Jail and Correctional Facility Authority, and to the Attorney General more than 30 days prior to the filing of this action.

3. The Plaintiff has complied with the provisions of W.Va. Code §55-7B-6 by serving PrimeCare Medical of West Virginia, Inc., and PSIMED CORRECTIONS, LLC each with a Notice of Claim and Certificate of Merit more than 30 days prior to filing this civil action.

4. PrimeCare has stated it does not request pre-litigation mediation pursuant to the statute.

5. The acts, occurrences and/or omissions which give rise to this lawsuit occurred within Cabell County, West Virginia.

## II. PARTIES

6. Kathleen Jeffers is the Administratrix of the Estate of Bradley Siders, II. Mr. Siders was a resident of Mason County, West Virginia.

7. Defendant West Virginia Division of Corrections and Rehabilitation, formerly West Virginia Regional Jail and Correctional Facility Authority, hereinafter referred to as "WVDCR," a department or agency of the State of West Virginia, at all times material to this action, was a duly constituted State governmental agency charged with the administration of the jails in West Virginia, including providing medical care for individuals incarcerated

TCHER LAW OFFICE
36 FIFTH AVENUE
ITINGTON WV 25701

(304) 523-3217
AX (304) 523-3184

2

within the jail system. Western Regional Jail and Correctional Facility, formerly Western Regional Jail, hereinafter referred to as "WRJ," is operated by WVDCR in Cabell County, West Virginia. In regard to any causes of action asserted against this State agency, it is hereby alleged that the agency was not exercising a legislative, judicial or administrative function involving the determination of a fundamental governmental policy. The State Defendants are insured under an insurance policy of the State Board of Risk and Insurance Management, which, upon information and belief, has a maximum liability limit of at least $1,000,000.00. To the extent the immunity of the State Defendants is not waived by law or its actions, Plaintiff acknowledges the monetary recovery sought in this case from the State Defendants is limited to the applicable insurance coverage.

8. Defendant Officer Ricky Gaberielse was at the time of the incident complained of herein an employee and agent of WVDCR/WRJ. It is the Plaintiff's opinion and belief that he is a resident of West Virginia.

9. Defendant Officer Jimmy Pine was at the time of the incident complained of herein an employee and agent of WVDCR/WRJ. It is the Plaintiff's opinion and belief that he is a resident of West Virginia.

10. Defendant PrimeCare Medical of West Virginia, Inc., hereinafter referred to as "PrimeCare," a West Virginia corporation, provides medical services to those incarcerated in West Virginia jails through a contract with the WVDCR/WRJ and/or others.

11. Defendant PSIMED CORRECTIONS, LLC, hereinafter referred to as "PSIMED," a West Virginia corporation, provides medical services to those incarcerated in West Virginia jails though a contract with the WVDCR?WJR, PrimeCare, and/or others.

'CHER LAW OFFICE
36 FIFTH AVENUE
TINGTON, WV 25701

(304) 523-3217
AX (304) 523-3184

12. PrimeCare, PSIMED and WVDCR/WRJ were engaged in a partnership and/or joint venture or joint enterprise by virtue of their intertwining and agreement regarding providing medical services to inmates and inmate management for profit.

13. Defendant Anita Petitte at all times relevant herein was a nurse practitioner employed by and was an agent for PrimeCare and/or PSIMED. It is the Plaintiff's opinion and belief that she is a resident of West Virginia.

14. John and Jane Doe employees, contractors and/or entities are employees or are affiliated with WVDCR/WRJ, PrimeCare and/or PSIMED. They have been named as Defendants in the event that they are responsible for acts, omission or wrongs that were not apparent from a review of the records as of the filing of this Complaint.

15. Plaintiff hereby asserts and alleges that with respect to each cause of action and allegation herein applying to State officials or employees performing their prescribed discretionary functions, that said Defendants were acting within the scope of their authority and knowingly violated clearly established law that a reasonable public agency, employee, or official would have known, or otherwise acted maliciously, fraudulently, oppressively or in bad faith.

### III. FACTS

16. On or about March 1, 2017, Bradley Siders, II was committed to the WRJ by the Magistrate Court of Mason County, West Virginia. He entered the WRJ at approximately 12:50 p.m.

17. Prior to being committed to the WRJ, Mr. Siders had been diagnosed with serious and severe psychological issues, including, but not limited to, schizophrenia. He was prescribed

FCHER LAW OFFICE
36 FIFTH AVENUE
ITINGTON WV 25701

(304) 523-3217
AX (304) 523-3184

4

medications for said psychological issues.

18. WVDCR/WRJ, PrimeCare, and PSIMED employ personnel for the purpose of performing intake evaluations to determine the proper location of placement in the WRJ facility. Upon information and belief, the personnel assigned to complete these intake forms are not properly trained and routinely fail to properly document the proper responses from inmates in completing the forms. At the time of and throughout Mr. Siders' incarceration at WRJ, the jail did not have an active inmate classification program that would have identified him as requiring special management due to his mental health issues.

19. Corporal Michael York was the primary booking officer at WRJ for Mr. Siders. He was interviewed during the investigation of the facts surrounding Mr. Siders' death. He identified Mr. Siders as a person possessing mental issues or drug issues based upon the arresting officer's statements to him about when he arrested Mr. Siders. The arresting officer stated that Mr. Siders was screaming "Black Hawk down" at the sky, was talking about shooting down helicopters, and was talking about the CIA. Out of concern, Corporal York requested for Mr. Siders to be seen by someone in mental health. He further caused Mr. Sider's cell placement classification to be changed from general population to protective custody. WVDCR/WRJ has policies and procedures in place that dictate that persons who are placed in protective custody are monitored by a corrections officer at the minimum of once every hour.

20. Mr. Siders was referred to licensed practical nurse Susie Christian, who was employed by PrimeCare. She was interviewed during the investigation of the facts surrounding Mr. Siders' death. Mr. Siders informed her of previous suicide attempts, his past incarcerations, his past psychological history, which included a history of hospitalization for

CHER LAW OFFICE
36 FIFTH AVENUE
TINGTON WV 25701

(304) 523-3217
AX (304) 523-3184

the schizophrenia, and his past addiction to various drugs including heroin, benzodiazapams, and bath salts. She knew Mr. Siders had tried to commit suicide in the past year. She was aware of the fact that the arresting officer stated that at the time of Mr. Siders' arrest, he was screaming "Black Hawk down" at the sky and talking about the CIA. Despite her knowledge of the aforementioned facts about Mr. Siders, she cleared him for housing in the general population at the WVDCR/WRJ facility, as she did not see anything to cause alarm and that he did not seem any different from any other inmate.

21. Gail Thompson, M.A., is employed by PrimeCare and/or PSIMED as a psychologist. She was interviewed during the investigation of the facts surrounding Mr. Siders' death. Per Officer York's request, she was tasked to come to booking to conduct the initial psych screening of Mr. Siders on March 1, 2017, due to his acts of bizarre behavior. Mr. Siders told her that he had snorted 1/8 of a suboxone pill two days prior to entering the WRJ facility. She noted that he acted distracted, but booking was busy and she contributed his distractedness to busy booking. She noted he was moving his lips a lot. She noted that he had been previously hospitalized at St. Mary's hospital for hallucinations and schizophrenic behavior. Mr. Siders told her he was prescribed Haldol and Invega for his schizophrenia. During the investigation after the death of Mr. Siders, Ms. Thompson was asked what schizophrenia means and she stated that it is a disorganized thought process and/or hearing and seeing things that are not there. She then stated that there are more extensive symptoms, but she would have to look them up. Despite the fact that she did not have the training, education, and/or experience to recognize the signs and symptoms of schizophrenia and/or schizophrenic behavior, she made the decision to not place Siders on suicide watch or any other watch such as protective custody, as she did not see anything to warrant any kind of a watch for his safety. Instead, she

HER LAW OFFICE
FIFTH AVENUE
NGTON, WV 25701

(04) 523-3217
(304) 523-3184

recommended that he be placed in general population with other inmates. She made the decision for psych to follow-up with him in two days to make sure his behavior was not from sleep deprivation and/or not drug related. From a review of the investigation herein, it appears that she did not take the time to review Mr. Sider's medical history taken by the nurses in booking on this incarceration nor did she review any of his medical records from his past incarcerations at the WRJ. Had she taken time to review his intake records from this incarceration, she would have known he reported that he had snorted "Geek" two days prior to coming to the jail and that he had not slept in seven days. Had she reviewed the records or taken the time to look at Mr. Siders, she would have noticed fresh needle marks on his arms suggesting intravenous drug use. Had she taken the time to review the records from his past incarcerations at the WRJ, she would have been made aware of the fact that he had been on past withdrawal protocols at the WRJ for heroin and alcohol use. She would have known that in 2011, he had prior mental health treatment for Post-Traumatic Stress Disorder, Bi-Polar Disorder, and Paranoid Schizophrenia. She would have known that in 2013, he had been on a psychological mental health suicide watch at the WRJ. She would have known that in February 2016, he stated that he had been hospitalized two times in six months in 2015 for schizophrenia. She would have known that he was prescribed Klonopin, Trazedone, and Invega, all of which are medications prescribed for serious psychological disorders. Finally, she would have understood that in February 2016, Mr. Siders reported to the WRJ, PrimeCare, and/or PSIMED staff that he was very worried about not getting his medications and that he stated that he would go crazy and that he heard voices without them. The decision made by Ms. Thompson to place Mr. Siders in general population was solely based upon interviewing him and assuming he was able to intelligently and/or intellectually describe his psychological

CHER LAW OFFICE
5 FIFTH AVENUE
INGTON WV 25701

(304) 523-3217
X (304) 523-3184

7

issues when he had been referred to her for his bizarre behavior, which included hallucinations. Her actions further violated the drug withdrawal protocol at WVDCR/WRJ. Ms. Thompson was later informed that Mr. Siders had to be brought back to nursing a couple hours after she saw him, as he was exhibiting strange behaviors. She was never notified by the medical staff at PrimeCare and/or the employees of WRJ about his subsequent strange behaviors.

22. As set forth above, Corporal York believed that it was necessary to place Mr. Siders in protective custody rather than general population due to his bizarre behavior. Despite his initiating the paperwork for the change, Mr. Siders was placed in C-Pod, which is in general population. While in C-Pod, Mr. Siders spoke to Officer Vance Keaton or Keeton, hereinafter referred to as "Keaton." Keaton was interviewed during the investigation of the facts surrounding Mr. Siders' death. Mr. Siders told Keaton that he was General Siders from the Star Gate Galactic and that he was there on the Director's orders to make sure everything was right in the jail. Keaton removed Mr. Siders from C-Pod and brought him to an interview room to speak with medical. Keaton spoke to his superior, Corporal Blevins, and told him Mr. Siders was acting "out of reality" and that he needed to be rehoused or placed on watch. Corporal Blevins instructed Keaton that Mr. Siders needed to be evaluated by medical first. Keaton also contacted Officer Payton and asked her to find suicide housing for Mr. Siders because he was hallucinating and not acting normal. She instructed him that Mr. Siders had to be taken to medical while she worked on getting a DOJ order for medical put him on suicide watch. Keaton then took Mr. Siders to speak to two PrimeCare nurses, Craig Conner and Kristen Turner. They were interviewed during the investigation of the facts surrounding Mr. Siders' death. Officer Joseph Dorsey, hereinafter referred to as "Dorsey," was present

HER LAW OFFICE
FIFTH AVENUE
NGTON, WV 25701

04) 523-3217
(304) 523-3184

8

when Mr. Siders was interviewed by the nurses. Dorsey was interviewed during the investigation of the facts surrounding Mr. Siders' death. Dorsey heard Mr. Siders tell Nurse Conner that he was the Administrator of the Western Regional Jail and that he needed to get back to his office. Mr. Siders was asked if he knew where he was and stated he was the leader of the Star Gate Command Program and that he could not turn off his brain waves because they would not allow him to. Nurse Turner noted in Mr. Siders' file, "Inmate brought to medical due to odd behavior." The notes state that Mr. Siders had fresh needle track marks in his bilateral arms and that he stated he used "Geek x2" yesterday before coming to the jail. Nurse Conner asked Nurse Turner to interview Mr. Siders as he (Nurse Conner) had been at WRJ for only two months. According to Nurse Conner, Nurse Turner had been there longer and would know better what to do with Mr. Siders, as it appeared that he was having a psychological or mental issue and was not under the influence of drugs. After only about two minutes of interviewing Mr. Siders, the nurses determined that he was not suicidal. Dorsey, however, felt something was not right with Mr. Siders and that he should have been placed on suicide watch, as he thought Mr. Siders had mental issues. Despite those feelings, he did nothing other than defer to Nurse Conner's decision. He did not request that Mr. Siders be seen by a psychologist nor did he report the matter to a supervisor. As set forth above, Nurse Conner stated that he deferred to Nurse Turner's decision, as he did not feel comfortable making the decision himself because he had been employed there for only two months. Mr. Siders was ultimately moved to protective custody where he was previously supposed to be per Corporal York's original orders.

23. At 7:28 p.m. on March 1, 2017, Mr. Siders was tasked to see psych and was scheduled to see Anita Petitte on March 2, 2017. Ms. Petitte is a nurse practitioner employed

HER LAW OFFICE
FIFTH AVENUE
NGTON, WV 25701

)04) 523-3217
.(304) 523-3184

by PrimeCare and/or PSIMED and supervised by psychiatrist, Dr. Timothy Thistlewaite. She performs services for nine (9) correctional facilities each week. She comes to the WRJ one day per week and usually stays there for approximately three to four hours per visit. Prior to coming to the WRJ, she is given a list of inmates who need to be seen. She was interviewed during the investigation of the facts surrounding Mr. Siders' death and stated that the medical department contacted her to see Mr. Siders, as he was acting bizarre and talking about being the leader of the Star Gate. She stated that she reviewed Mr. Siders' chart for 15 minutes and that she remembered that she had seen him two years prior to this incident. She remembered that he had admitted to drug use but no kind of psychosis. Either Ms. Petitte intentionally misled the investigator about her actions of reviewing Mr. Siders' chart or her review was deliberately indifferent to his needs because his medical file at the WRJ contains a plethora of information about his past psychological issues. Had she taken time to review his intake records from this incarceration, she would have known that he reported that he had snorted "geek" two days prior to coming to the jail, that he had not slept in seven days, and that he was hallucinating about the CIA and Black Hawk helicopters. Had she reviewed the records or taken the time to physically look at him, she would have seen reports of nurses that he had fresh needle marks and she would have noticed fresh needle marks on his arms suggesting recent intravenous drug use. Had she taken the time to review the records from his past incarcerations at WRJ, she would have been made aware of the fact that he had been on past withdrawal protocols at WRJ for heroin and alcohol use. She would have known that in 2011, he had prior mental health treatment at WRJ for Post-Traumatic Stress Disorder, Bi-Polar Disorder, and Paranoid Schizophrenia. She would have known that in 2013 he had been on a psychological mental health suicide watch at the WRJ. She would have known that in

HER LAW OFFICE
FIFTH AVENUE
NGTON, WV 25701

304) 523-3217
(304) 523-3184

10