IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

KATHLEEN JEFFERS, individually
and as Administratrix of the Estate of
Bradley Siders, II, deceased,

                    Plaintiff,

v.                                      CIVIL ACTION NO.   3:19-0462

WEST VIRGINIA DIVISION OF CORRECTIONS
AND REHABILITATION, formerly West Virginia
Regional Jail and Correctional Facility Authority;
OFFICER RICKY GABERIELSE, individually and as an
agent of West Virginia Division of Corrections and Rehabilitation;
OFFICER JIMMY PINE, individually and as an agent
of West Virginia Division of Corrections and Rehabilitation;
PRIMECARE MEDICAL OF WEST VIRGINIA, INC.;
PSIMED CORRECTIONS, LLC;
ANITA PETITTE, individually and as an employee of
Primecare Medical of West Virginia, Inc. and/or PSIMED
Corrections, LLC; and
JOHN and JANE DOE or DOES,

                    Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Joint Objection to Plaintiff's Ex Parte Interviews of Defendants Ricky Gaberielse and Jimmy Pine (ECF No. 153). Defendants argue that the Court should strike the transcripts of interviews between Plaintiff's counsel and Defendant Officers because (1) sanctions are warranted for counsel's misconduct and (2) the transcripts are inadmissible. The Court declines to strike the transcripts on either ground.

(1) <u>Sanctions for Misconduct</u>

Defendants argue that the interviews should be stricken as a sanction for Plaintiff's counsel's violation of Rules 4.2, 4.3, and 8.4 of the West Virginia Rules of Professional Conduct.

Although the Court may have discretionary authority to impose sanctions for misconduct, the Court declines to exercise that discretion in this instance. *See State ex rel. State Farm Fire & Cas. Co. v. Madden*, 451 S.E.2d 721, 730 (W. Va. 1994).

First, Defendants argue that Plaintiff's counsel violated Rule 4.2 of the West Virginia Rules of Professional Conduct, which prohibits a lawyer from communicating with a person the lawyer knows to be represented by another lawyer without consent or court order. Despite the original Complaint being filed on August 24, 2018, Defendant Officers were not represented by counsel at the time of the interviews, which took place nearly a year later in July of 2019. According to the interview transcripts, the Defendant Officers informed Plaintiff's counsel that they were no longer employees of WVDCR and had never been contacted by WVDCR or its attorney. The Officers also made clear during the interview that they had not retained separate counsel despite having been served with the Second Amended Complaint weeks earlier on June 13, 2019.

Defendants argue that the Court should nevertheless find that Plaintiff's counsel violated Rule 4.2 because he knew that WVDCR's counsel intended to represent Defendant Officers once proof of service had been docketed in the Circuit Court. However, Defendants cite no legal precedent extending Rule 4.2 to such circumstances, nor do Defendants explain why WVDCR could not contact Defendant Officers before proof of Plaintiff's June 2019 service was docketed on July 26, 2019. The Court agrees that Plaintiff's counsel knew that the Defendant Officers would be represented at some point in the case and took advantage of the confusion surrounding the proof of service to obtain an interview under questionable circumstances. Nevertheless, the Court cannot conclude that counsel violated Rule 4.2.

Defendants' second argument is that Plaintiff's counsel violated Rule 4.3 of the West Virginia Rules of Professional Conduct, which prohibits lawyers "dealing on behalf of a client with a person who is not represented by counsel," from "stat[ing] or imply[ing] that the lawyer is

disinterested." Defendants point to Comment 1 of that rule, which explains that "a lawyer will typically need to identify the lawyer's client and, where necessary, explain that the client has interests opposed to those of the unrepresented person." W. Va. R. Pro. Conduct 4.3, cmt. 1.

According to the interview transcripts, Plaintiff's counsel, Charles Hatcher and Richard Weston, identified themselves at the beginning of both interviews as counsel for Plaintiff. Although Hatcher appears to have purposefully minimized the Officers' role in the case by saying "we're after the jail. That's our main person, the jail, the medical people," the Court cannot conclude that this statement demonstrates his intent to appear disinterested. The interviews took place well after Plaintiff served Defendant Officers with the Second Amended Complaint, which clearly names Pine and Gaberielse as defendants. Based on this service, the Court must presume that Defendant Officers knew that they were parties to the suit brought by Hatcher and Weston's client.

That is not to say that the Court condones counsel's tactics overall. Rule 8.4 of the West Virginia Rules of Professional Conduct prohibit an attorney from "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation." Hatcher's conduct nearly crossed this line. For example, after Hatcher disclosed his representation of Plaintiff, Gaberielse stated "I haven't talked to anybody representing anyone. I have no idea what's going on." *Gaberielse Interview Tr*. 5:6-8, ECF No. 167-1. Hatcher should have explained that his client was suing Gaberielse in his personal and official capacity. Instead, he merely stated that the case was in federal court and quickly returned to questioning Gaberielse about the facts of the case. Gaberielse indicated at the end of the interview that he "thought maybe [Hatcher] [was] from the jail." *Id*. at 77:19-20.

Nevertheless, the Court cannot conclude that any of counsel's statements rise to the level of sanctionable conduct under the circumstances. Although Hatcher must have understood that the Officers were confused and could have been more forthright, he gave the Officers sufficient notice

of his role in the interview by serving Defendants with the Second Amended Complaint and identifying himself as Plaintiff's counsel. Accordingly, the Court declines to impose sanctions.

(2) <u>Admissibility of Ex Parte Interviews</u>

Defendants next argue that the interview transcripts must be stricken from the record and excluded from this Court's consideration of the motions for summary judgment because they are inadmissible under the Federal Rules of Evidence. However, Rule 56(c)(2) does not preclude consideration of inadmissible evidence if the party demonstrates that it can be "presented in a form that would be admissible in evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538 (4th Cir. 2015), *as amended* (June 24, 2015) (citing *10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure* § 2721 (3d ed.1998)); *see also* Fed. R. Civ. P. 56(c)(2)). If a party objects to one form of evidence, "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56 (c)(2) advisory committee's notes to 2010 amendments. The Court is satisfied with Plaintiff's explanation that the facts contained in the interview will be admissible in the form of testimony from the Officers. Therefore, the Court **DENIES** Defendants' Objection (ECF No. 153).

The Clerk is **DIRECTED** to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: June 8, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE